### Jabez C. Woodman *versus* Albert Valentine.

A surety in a poor debtor's bond has no authority, under the poor debtor act of the Rev. Stat. c. 148, to surrender and deliver his principal into the custody of the jailer, against the will of such principal.

Where one of the alternatives of the condition of such bond is, that the debtor shall " be delivered in custody of the jailer," a legal delivery only, and not an illegal commitment, will constitute a performance of that part of the condition.

A poor debtor's bond must be made in conformity with the statute provisions in force at the time in all its material parts, or it will not be a good statute bond, although it may secure to the creditor equally valuable rights.

If one of the alternatives of the condition of the bond, taken since the Rev. Stat. were in force, be — ' And take the oath or affirmation as provided in the seventh section of an act entitled an " Act supplementary to an act for the relief of poor debtors,' passed April 2d, 1836, and perform all the other conditions provided by the laws of the State, relative to the relief of poor debtors" — that part of the bond which relates to the statute of 1836, cannot be considered as void, and rejected as surplusage.

EXCEPTIONS from the District Court, GOODENOW J. presiding.

The facts are stated in the opinion of the Court. One of the alternatives in the condition of the bond was in these words: — " And take the oath or affirmation as provided in the seventh section of an act entitled an ' Act supplementary to an act for the relief of poor debtors,' passed April 2d, A. D. 1836, and perform all the other conditions provided by the laws of the State relative to the relief of poor debtors." The only ruling of the District Judge is thus stated in the exceptions: — " Hereupon the Court ruled the law to be with the plaintiff, and directed a verdict for the plaintiff for twenty dollars, which was found accordingly." The defendant filed the exceptions.

*Dunn*, for the defendant, supposed it to be very clear, that as this bond was given after the Rev. Stat. went into operation,

and provided for the taking of the oath prescribed in the statute of 1836, that it was not good as a statute bond. The plaintiff, then, at common law can recover, if any thing, but the damages actually suffered, merely nominal in this case. He contended, that the defendants had actually performed the condition of the bond; but should the Court otherwise determine, the condition has been performed as far as it was in the power of the surety to perform it, as he offered to surrender the principal to the jailer, and that is sufficient as it respects him. *Pease* v. *Norton,* 6 Greenl. 229.

*J. C. Woodman, pro se,* read an argument in writing. *Kavanagh* v. *Saunders,* 8 Greenl. 422; *Morse* v. *Rice,* 21 Maine R. 53; and 2 Black. Com. 340, were cited. The principal grounds taken are noticed in the opinion of the Court.

The opinion of the Court was by

SHEPLEY J.— This is a suit upon a poor debtor's bond. The judgment was recovered on February 21, 1840. The debtor was arrested on execution and liberated by giving this bond on December 20, 1841. The condition of the bond should have been made in conformity to the provisions of the Revised Statutes. It appears to have been made with the design, that it should be in conformity to the provisions of the acts passed in the years 1835 and 1836.

It is contended in defence, that there has been a performance of one of the alternatives named in the condition of the bond. The testimony recited in the bill of exceptions shows, that the surety went with the principal to the office of the prison keeper, and offered to surrender the principal to him in discharge of the bond, informing him that the principal had come with him to be surrendered for that purpose. The prison keeper was not satisfied, that the bond was a lawful one, and he refused to receive the principal, unless he would go into prison voluntarily. He refused to do so, and was not therefore received by the prison keeper. The defendant's counsel insists, that the surety was authorized by law to surrender his principal in discharge of his bond, and that he has done all,

which he could do, to perform that part of the condition. It becomes important to consider whether the surety could lawfully surrender his principal without his consent, and thus be discharged from his obligation.

The act for the relief of poor debtors, passed in the year 1822, c. 209, authorized the surety of a poor debtor to surrender his principal. The sixth section of that act provided, that such bond "shall be discharged and void, whenever the principal therein shall surrender himself, or be surrendered by his surety, to the keeper of the prison." This provision ceased to be operative after the act passed in the year 1831, c. 520 was in force. The latter act was repealed by the act of 1835, c. 195; the eighth section of which provided, that a poor debtor might be released from an arrest or imprisonment by giving a bond conditioned to do certain acts named, " or be delivered in custody of the jailer within said time." This act was repealed by the repealing act found in the Revised Statutes. The twentieth section of c. 148, provides for the release of a poor debtor from arrest or imprisonment, by his giving a bond conditioned to perform certain acts " or deliver himself into the custody of the keeper of the jail." The clause contained in the act of 1822, which authorized the surety to surrender his principal, has been wholly omitted in the Revised Statutes. Instead of the words, " or be delivered in custody of the jailer," contained in the act of 1835, the words, " or deliver himself into the custody of the keeper of the jail," are found in the Revised Statutes. It cannot be presumed, that such a change has been unintentionally made. The language of the law now in force clearly requires the act of surrender to be performed by the principal. There is no provision of law authorizing the surety, by implication or otherwise, to surrender his principal against the will of such principal. When it was intended, that bail or sureties should be authorized to surrender their principals in discharge of their obligations, provision has been made for it. Ch. 114, § 99 and 100. The debtor in this case did not intend to surrender himself and go into prison. He refused to do it. The prison keeper could not

lawfully detain him, if he was not legally committed to his custody. Although the words contained in the condition of the bond are, that he should "be delivered in custody of the jailer ;" a legal delivery only could have been intended to be provided for. Such a delivery only, and not an illegal commitment, could be a performance of the condition. The defence therefore fails.

The bill of exceptions states, that the Court directed a verdict for the plaintiff for a certain sum. The bond was not made in conformity to the provisions of the statute then in force. The plaintiff contends, that all that part of the condition, which refers to the acts passed in the years 1835 and 1836, is void ; that the condition should be considered to be the same, as it would have been, if that language had been omitted ; and that the clause, "and perform all other conditions provided by the laws of the State relative to the relief of poor debtors," was sufficient to require the debtor to take the oath and perform the duties required of him by the Revised Statutes. If this be admitted, the conclusion, which he would draw from it, does not follow, that is, that the bond would be a good statute bond. It is not sufficient to make it a statute bond to show, that the same rights might be secured to the parties by it as would have been secured to them by a bond made as the statute requires. A bond, whose penal sum is less or more than double the sum, for which the debtor had been arrested or imprisoned, might secure the rights of the parties as fully, if it could be regarded as a statute bond, as one whose penal sum was precisely double that amount. But such bonds were never considered to be statute bonds, before the Revised Statutes were in force. A bond must be made in conformity to the statute provisions, in all its material parts, or it cannot be regarded as a statute bond. It is a material part of the condition of the bond, provided for by statute, c. 148, § 20, that it should require the debtor, as one of the alternatives for his discharge, to "take the oath prescribed in the twenty-eighth section" of that chapter. It is material for the purpose of making the oath certain, which is to be administered to the debtor. It is material to prevent delay and difficulty at the

time of the examination; and to remove all doubts from the minds of the justices respecting the oath, which they are to administer. If that part of the condition of the bond, which is alleged to be void, had been omitted, the condition would have contained no express provision, that any oath should be administered to the debtor. The debtor and justices would have been left to ascertain in the best manner they could, what acts the laws of the State relative to the relief of poor debtors required of them. It was not the design of the legislature, that they should be left in such a condition.

There is nothing in the condition of the bond, which will prevent its being a good bond at common law; but it cannot be considered such a bond, as the statute required. The defendant was entitled to a hearing in damages, that they might be assessed at such an amount only, as the plaintiff could prove that he had actually sustained.

*Exceptions are sustained, and a new trial is granted.*